784 P.2d 30
**STATE of New Mexico, Petitioner,**

v.

**Esequiel CORDOVA, Respondent.**

No. 18645.

Supreme Court of New Mexico.

Dec. 20, 1989.

Hal Stratton, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for petitioner.

Jacquelyn Robins, Chief Public Defender, Jerry Todd Wertheim, Asst. Appellant Defender, Santa Fe, for respondent.

## OPINION

· RANSOM, Justice.

Respondent Cordova was convicted of possession of heroin. He appealed the denial of his motion to suppress evidence seized under an allegedly invalid search warrant. The court of appeals reversed his conviction, holding that the affidavit used to secure the warrant did not provide an adequate basis from which the issuing magistrate could conclude probable cause existed to search the house where Cordova resided at the time of his arrest.

The affidavit submitted to secure the search warrant in this case stated:

1. That within the last 24 hours, Affiant has been contacted by a Confidential Informant, who advised that a subject driving a red Chrysler Cordova with Texas Plates, was currently selling heroin at a residence at 1106 South Cahoon. That Subject John Doe was from out of town and had brought the heroin in.

2. That Said Informant stated that subject was a [S]panish male, approximately 6–0 tall, weighing a little over 200 pounds, having black hair and did have some tattoos on his person.

3. That Said Informant did state that through personal knowledge, several heroin users had been to this residence.

4. That Said Informant has furnished information to Affiant in the past which Affiant did find to be true and correct through personal knowledge and investigation.

5. That based on the information provided by Said Informant, Affiant did drive by the residence and did observe the red Cordova which did have a partial white vinyl roof. Description and the trailer house next to the

house are the same as stated by Informant. Also, on checking utilities, it was learned that a Carol Cordova resided at this address.

The court of appeals based its determination that this affidavit was lacking on our rule of criminal procedure governing the issuance of warrants based on affidavits containing hearsay information. *See* SCRA 1986, 5–211(E). The court noted that our interpretations of Rule 5–211(E) have been based on the two-prong test formulated by the Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). However, as also noted by the court of appeals, the United States Supreme Court has since abandoned the *Aguilar–Spinelli* test in favor of a determination based on "the totality of circumstances." *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). We granted certiorari to determine the impact, if any, of the *Gates* decision on Rule 5–211(E). We conclude that our previous reading of this rule comports both with its plain meaning and with the requirement of the New Mexico Constitution that "no warrant * * * shall issue * * * without a written showing of probable cause, supported by oath or affirmation." N.M. Const. art. II, § 10.[1] Moreover, although our analysis of the facts of this case differs from that of the court of appeals, we affirm the result reached by that court.

*Federal law before Gates—The reasons behind the two-prong test of Aguilar and Spinelli.* The fourth amendment of the federal constitution, like Article II, Section 10 of our state constitution, strongly favors the warrant process. This process requires law enforcement officials to make a showing of probable cause before a "neutral and detached magistrate" in order to obtain a search warrant. *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436 (1948); *see also State v. Baca*, 97

---

1. Because our holding today is based on our interpretation of the New Mexico Constitution, we do not consider as controlling the principles announced in *Gates* or the other federal precedent cited in the body of this decision, albeit the reasoning of those opinions informs our result.

N.M. 379, 640 P.2d 485 (1982). The intent of this requirement, and of the protection it affords,

is not [to deny] law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Johnson,* 333 U.S. at 13–14, 68 S.Ct. at 368–69.

■ The constitutionally mandated role of magistrates and judges in the warrant process requires them to make "an informed and deliberate" determination whether probable cause exists. *Aguilar v. Texas,* 378 U.S. at 110, 84 S.Ct. at 1511 (quoting *United States v. Lefkowitz,* 285 U.S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877 (1932)). Accordingly, when an application for a search warrant is based on an affidavit, the affidavit must contain sufficient facts to enable the issuing magistrate independently to pass judgment on the existence of probable cause. "Mere affirmance of belief or suspicion [by the affiant] is not enough." *Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933) (warrant improperly issued upon sworn affidavit stating simply that affiant "has cause and does believe" certain liquors were to be found in specified location); *see also Baca,* 97 N.M. at 382, 640 P.2d at 488 (bald and unilluminating assertion that defendant was known by informant to be involved in narcotics transactions is entitled to no weight in appraising judge's decision to issue warrant).

Frequently, applications for search warrants depend on unnamed, confidential, police informants to show the existence of probable cause. To analyze such cases, the *Aguilar* and *Spinelli* Courts refined the basic requirement that applications for search warrants must contain sufficient detail to enable an issuing magistrate to make an independent determination of the existence of probable cause. Although an affidavit may be based wholly or in part on hearsay provided by an unnamed informant, "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that [the facts were as] he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable.'" *Aguilar,* 378 U.S. at 114, 84 S.Ct. at 1514 (citations omitted); *see also State v. Snedeker,* 99 N.M. 286, 657 P.2d 613 (1982); *State v. Perea,* 85 N.M. 505, 513 P.2d 1287 (Ct.App.1973) (applying test to "double hearsay" problem). These requirements are often called the "basis of knowledge" and "veracity" (or "credibility") tests. *See, e.g., Gates,* 462 U.S. at 267, 103 S.Ct. at 2347 (White, J., concurring); Kamisar, *Gates, "Probable Cause," "Good Faith," and Beyond,* 69 Iowa Law Review 551, 556 (1984).

In *Aguilar,* the Court held an affidavit to be insufficient to support a search warrant when it stated simply that "Affiants have received reliable information from a credible person and do believe" that illegal drugs and paraphernalia were being kept at a particular residence. The Court found this affidavit lacking because it expounded neither the basis for the officers' conclusion that the information was gathered in a reliable way nor the basis for the conclusion that the informant was credible.[2]

In *Spinelli,* the Court explored two particular means by which a magistrate reasonably could conclude that an affidavit contained sufficient information to satisfy *Aguilar's* two prongs. First, the Court noted, an affidavit that otherwise would be inadequate nevertheless may support a determination of the existence of probable cause if "it fairly [can] be said that the tip

---

**2.** In many cases, the affidavit will attempt to satisfy the basis of knowledge and veracity tests by stating that the informant has a reliable "track record" with the police, and that the informant gathered the information from firsthand observation. In other cases, the credibility of an informant may be assumed when the tip constitutes an admission that the informant was involved in the illegal activity. *See Perea,* 85 N.M. at 508, 513 P.2d at 1292; *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

* * * when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration." 393 U.S. at 415, 89 S.Ct. at 588. Under the facts of *Spinelli,* however, Justice Harlan, writing for the Court, concluded that independent police investigation had verified only innocent facts that were not sufficiently suggestive of the illegal bookmaking activity alleged. *Cf. Perea,* 85 N.M. at 508–509, 513 P.2d at 1292–93 (affidavit established probable cause when it alleged that police officer had defendant's premises under surveillance for months, had seen several known narcotics users come and go, had observed fresh needle marks on some whom he stopped, and some whom he stopped admitted purchasing narcotics from defendant).

The *Spinelli* Court also opined that, even when an affidavit does not affirmatively state an informant's basis of knowledge, it may be inferred that an informant who otherwise is known to be credible obtained the information set forth in the affidavit in a reliable fashion *if* the tip contains enough detail to be self-verifying. *Id.* at 417, 89 S.Ct. at 589; *see also Baca,* 97 N.M. at 382, 640 P.2d at 488. The *Spinelli* Court concluded, however, that there was insufficient detail set forth in the affidavit in question to compensate for its failure to specify the factual basis for the informant's tip.[3]

*New Mexico's rules of criminal procedure.* In New Mexico, this Court has promulgated rules to govern the determination of probable cause for the issuance of a search warrant. Under SCRA 1986, 5–211(E),[4]

"[P]robable cause" shall be based upon substantial evidence, which may be hearsay in whole or in part, *provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.* Before ruling on a request for a warrant the court may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such additional evidence shall be reduced to writing, supported by oath or affirmation and served with the warrant.

(Emphasis added.) As first recognized by the court of appeals in *Perea,* and by this Court in *State v. Turkal,* 93 N.M. 248, 599 P.2d 1045 (1979), our rules of criminal procedure codify the standard set out in *Aguilar* and related Supreme Court cases.

The use of the conjunctive "and" in Rule 5–211(E) clearly contemplates that an affidavit must set forth both: (1) a substantial basis for believing the informant; and (2) a substantial basis for concluding the informant gathered the information of illegal activity in a reliable fashion. It is equally clear that these requirements are formulations of the "veracity" and "basis of knowledge" tests of *Aguilar–Spinelli.* Moreover, we are convinced that these requirements structure the issuing magistrate's inquiry in a manner made necessary by the affidavit's reliance on second or third hand reports from an unnamed informant. As Justice Harlan noted, "It is not possible to argue that since certain information, if

---

**3.** The *Spinelli* Court compared the extent of detail in the case before it to that in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In *Draper,* the informant's tip described in minute detail the time of arrival, dress, and movements of an alleged drug courier. This detail provided police, upon observing the suspect as predicted, with probable cause to make a warrantless arrest. Although the detailed facts in the tip did not themselves give rise to an inference of illegal activity, they were of a kind that generally would have been known only by someone intimately connected with making careful arrangements for meeting the suspect. By analogy, the *Spinelli* Court posited that a magistrate confronted with the tip considered in *Draper* could have concluded that the tip was based on personal knowledge without an affirmative statement to that effect. *Cf. Spinelli,* 393 U.S. at 426, 89 S.Ct. at 594 (White, J., concurring).

**4.** Rule 5–211 governs procedures in district court; however, identical provisions govern the determination of probable cause in applications for search warrants made in magistrate courts, *see* SCRA 1986, 6–208(F); in metropolitan courts, *see* SCRA 1986, 7–208(E); and in municipal courts, *see* SCRA 1986, 8–208(F).

true, would be trustworthy, therefore, it must be true. The possibility remains that the information may have been fabricated." *See United States v. Harris,* 403 U.S. 573, 592, 91 S.Ct. 2075, 2086, 29 L.Ed.2d 723 (1971) (Harlan, J., dissenting, joined by Douglas, Brennan, and Marshall, JJ.).

Conversely, if "the conclusory allegations of a police officer, presumably [truthful] * * * are insufficient to establish probable cause [cf. *Nathanson* ], the conclusory allegations of a generally [truthful] informant must be insufficient as well." Kamisar, *supra* at 556. "Truthful persons can be the bearers of hearsay, rumor, gossip, or bare conclusions as surely as can be liars." *State v. Jones,* 706 P.2d 317, 322–23 (Alaska 1985) (quoting *State v. Jackson,* 102 Wash.2d 432, 441, 688 P.2d 136, 142 (1984)). It is for these reasons that the two prongs of *Aguilar–Spinelli* and of our rule have been characterized as independent and "analytically severable" requirements. *United States v. Harris,* 403 U.S. at 592, 91 S.Ct. at 2086; *State v. Jackson,* 102 Wash.2d at 437, 688 P.2d at 139; *see also Baca,* 97 N.M. at 381, 640 P.2d at 487

("[T]he test we apply is two pronged, from which we cannot deviate.").

*The Supreme Court's rejection of the two-prong test in favor of the "totality of the circumstances" test.* In *Illinois v. Gates,* a four-justice plurality of the Supreme Court abandoned the *Aguilar–Spinelli* approach in favor of a "totality of the circumstances" test.[5] The Justices seem in large part to have been motivated by a conviction that some lower courts tended to apply the two-prong test in a rigid and technical fashion. They were convinced that such applications did not comport with the fourth amendment principle of probable cause, which was described as a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329.[6]

*Gates* did recognize the continued utility of the basis of knowledge and veracity tests as factors to be considered. *Id.* at 230, 103 S.Ct. at 2328. These factors, however, no longer were to be considered as exclusive or analytically severable requirements under the federal constitution.[7]

---

5. In *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), *on remand, Commonwealth v. Upton,* 394 Mass. 363, 476 N.E.2d 548 (1985), the Court applied the *Gates* totality-of-circumstances test in a per curiam opinion, reversing the decision below of the Massachusetts Supreme Court.

6. Other concerns of the *Gates* plurality, not discussed in the body of this opinion, include the concern that, if courts subject affidavits to great scrutiny, police may resort to warrantless searches, and the concern that rigid application of *Aguilar–Spinelli* unduly diminishes the value of anonymous tips in police work. 462 U.S. at 236–37, 103 S.Ct. at 2331. We note, however, that each of these concerns is itself derived from the plurality's concern that the test sometimes was applied too rigidly. As noted in the body of this opinion, these concerns do not accord with our experience of our courts application of the principles set forth in Rule 5–211(E). Under *Spinelli,* moreover, police corroboration may compensate for an inability to demonstrate that an anonymous tip was from a credible source, and a detailed description may compensate for an inability to show the anonymous informant's basis of knowledge. *See Gates,* 462 U.S. at 284, 103 S.Ct. at 2356 (Brennan, J., dissenting).

7. For example, the *Gates* plurality asserted that if an informant has a particularly good track record in predicting certain types of criminal behavior, it should not stand as an absolute bar to a determination of probable cause that the affiant has failed thoroughly to set forth the basis of this informant's prediction in a particular case. 462 U.S. at 233. This principle has some intuitive appeal as an empirical proposition in close cases, i.e., those in which the informant's veracity is particularly well established and the informant's basis of knowledge has not been omitted entirely. *See* Kamisar, *Gates, "Probable Cause," "Good Faith," and Beyond,* 69 Iowa Law Review 551, 580 (1984). Nevertheless, this empirically acceptable rule-of-thumb implies some abdication of the issuing judge's role in making an *independent* assessment of the affidavit's sufficiency. "By requiring police to provide certain crucial information to magistrates and by structuring magistrates' probable cause inquiries, *Aguilar* and *Spinelli* assure the magistrate's role as an independent arbiter of probable cause." *Gates,* 462 U.S. at 283, 103 S.Ct. at 2356 (Brennan, J., dissenting). Similarly, as a strictly empirical proposition, one can argue that, as a magistrate may know a particular police officer to be an honest and reliable observer of human events, the magistrate reasonably could conclude the officer's summary conclusion in a particular case was truthfully

*The New Mexico experience.* We believe that what we have identified as the primary reason of the *Gates* plurality for abandoning the two-prong test—its application in too rigid and technical a fashion by some courts—has not proved to be a problem in our state courts' application of the standard set forth in Rule 5–211(E). In *Perea,* for example, the court of appeals was careful to note that affidavits normally are "drafted by non-lawyers ... in the midst and haste of a criminal investigation, therefore, technical requirements of elaborate specificity have no proper place in a court's evaluation." 85 N.M. at 507, 513 P.2d 1287. The *Perea* Court also noted that affidavits should be tested under less rigorous standards than those governing admissibility at trial. *Id.* Similarly, in *State v. Snedeker,* 99 N.M. 286, 290, 657 P.2d 613, 617 (1982) (quoting *State v. Gutierrez,* 91 N.M. 542, 545, 577 P.2d 440, 443 (Ct.App.1974)), we noted that on issues of probable cause to support a warrant:

> "(1) only a probability of criminal conduct need be shown; (2) there need be less vigorous proof than the rules of evidence require to determine guilt of an offense; (3) common sense should control; [and] (4) great deference should be shown by courts to a magistrate's determination of probable cause."

*See also Baca,* 97 N.M. at 380, 640 P.2d at 486 (showing of probable cause that a person has committed a crime will permit reasonable inference that evidence of the crime is to be found at his residence); *Tur-*

*kal,* 93 N.M. at 250, 599 P.2d at 1047 (probable cause established when, reading affidavit as a whole and considering corroboration supplied by second confidential informant, there was substantial evidence that juvenile informant was veracious and her information, based on personal knowledge, was reliable); *Gutierrez,* 91 N.M. at 545, 577 P.2d at 443 (there is no requirement that issuing magistrate conduct independent investigation to determine whether informant is reliable, nor is it necessary for affidavit to state that informant's past tips resulted in conviction when, from verified facts presented, magistrate reasonably could believe source was credible and a factual basis existed for information furnished).

We simply do not believe this tradition to be one of unthinking rigidity or overly technical application of the principles codified in Rule 5–211(E). Moreover, we believe these principles to be firmly and deeply rooted in the fundamental precepts of the constitutional requirement that no warrant issue without a written showing of probable cause before a detached and neutral magistrate. We are convinced that our rules, while providing a flexible, common sense framework, also provide structure for the inquiry into whether probable cause has been demonstrated. The fact that "non-lawyers" are involved in drafting applications for search warrants underscores rather than obviates the need for such structure.[8]

---

reported and well founded. However, as pointed out in the body of this opinion, the Supreme Court held in *Nathanson* that such an affidavit was constitutionally defective. Surely the second-hand, conclusory report from an unnamed source does not improve the magistrate's ability to make an independent determination. *Cf. Gates,* 462 U.S. at 272, 103 S.Ct. at 2350 (White, J., concurring in judgment, but not in abandonment of *Aguilar–Spinelli*).

**8.** *Cf. Gates,* 462 U.S. at 288, 103 S.Ct. at 2358 (Brennan, J., dissenting). Our rules do not require us to endorse the somewhat questionable premise, suggested by *Gates,* that a highly credible informant is likely to have gathered his information in a reliable fashion even though there has been an insufficient showing of the informant's basis of knowledge on the face of the affidavit. Rather, our rule encourages a

magistrate in close cases to inquire further of the officer or to call the informant as a witness. Not only does such a procedure comport better with the constitutional duty of the issuing magistrate to make an independent evaluation, it eliminates the need to make that determination on the basis of assumptions which, in any given case, well may be incorrect. We are mindful of Justice Harlan's observation that "in order to leave some room for the States to cope with their own diverse problems, there has been a tendency to relax federal requirements under the Fourth Amendment, which now govern state procedures as well." *Coolidge v. New Hampshire,* 403 U.S. 443, 491, 91 S.Ct. 2022, 2050, 29 L.Ed.2d 564 (1971) (Harlan, J., concurring). In this respect, our rejection of *Gates* as a guide in interpreting the New Mexico Constitution is not entirely a rejection of the concerns of the *Gates* majority. Our holding today also reflects our

We conclude that our present court rules better effectuate the principles behind Article II, Section 10 of our Constitution than does the "totality of the circumstances" test set out in *Gates*. *Accord, State v. Jones*, 706 P.2d 317 (Alaska 1985); *State v. Kimbro*, 197 Conn. 219, 496 A.2d 498 (1985); *Commonwealth v. Upton*, 394 Mass. 363, 476 N.E.2d 548 (1985), *on remand from Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984); *People v. Griminger*, 71 N.Y.2d 635, 529 N.Y.S.2d 55, 524 N.E.2d 409 (1988); *State v. Jacumin*, 778 S.W.2d 430 (Tenn.1989); *State v. Jackson*, 102 Wash.2d 432, 688 P.2d 136 (1984). *See also*, 1 W. LaFave, *Search and Seizure*, § 3.3 (Supp.1984); Kamisar, *supra*. *But see People v. Pannebaker*, 714 P.2d 904 (Colo.1986); *State v. Lang*, 105 Idaho 683, 672 P.2d 561 (1983); *Potts v. State*, 300 Md. 567, 479 A.2d 1335 (1984); *State v. Novembrino*, 105 N.J. 95, 519 A.2d 820 (1984); *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984); *State v. Ringquist*, 433 N.W.2d 207 (N.D.1988); *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1986); *State v. Adkins*, 346 S.E.2d 762 (W.Va. 1986); *Bonsness v. State*, 672 P.2d 1291 (Wyo.1983). *Cf. State v. Swaim*, 412 N.W.2d 568 (Iowa 1987) (statute set forth express considerations for magistrates and required explication of reasons for issuing warrant under *Gates* totality-of-circumstances test). Therefore, pursuant to our constitutional role in interpreting the provisions of our state constitution and in promulgating rules of procedure to govern criminal proceedings in this state, we hold that the court of appeals was correct in utilizing the *Aguilar–Spinelli* two-prong test.

*Affidavit failed to state adequately the basis of informant's knowledge—deficiency not cured by independent corroboration.* Turning to the affidavit at issue in this case, we agree with the court of appeals that it fails to establish probable cause. We disagree, however, that the affidavit fails because it does not set forth adequately the affiant's basis for believing

the informant to be credible. Rather, it fails because it did not provide the issuing court with a substantial basis for believing that the information provided was reliable. Since this affidavit contained both hearsay information from an informant and corroborating facts from independent police investigation, we follow the lead of *Spinelli* and analyze, first, the sufficiency of the hearsay report standing alone and, second, whether the facts corroborated by the police cured any deficiencies in the report.

The court of appeals noted that the affiant, while stating that his informant had provided reliable information in the past, did not say "when the informant had provided such information, how frequently, or whether the information provided related to a matter under criminal investigation * * *. [F]or all we know, the statement could refer to nothing more than the fact the informant had correctly provided * * * the time of day * * *." Slip op. at 4. The state argues in its petition for certiorari that it was not necessary for the affiant to detail the information given in the past by the informant. We agree with the state that "technical requirements of elaborate specificity have no proper place in a court's evaluation" of probable cause, *Perea*, 85 N.M. at 507, 513 P.2d at 1289. In reviewing the issuance of the warrant here, we balance this concession to common sense against the basic constitutional premise that the magistrate, and not the police officer, is to determine whether probable cause exists.

■ Here, the affidavit stated that the informant had provided information in the past which the affiant "did find to be true and correct from personal knowledge and investigation." It is true that this unadorned statement did not provide a particularly strong basis on which to judge the informant's credibility. *Cf. Turkal*, 93 N.M. at 250, 599 P.2d at 1042 (honest citizen was credible informant); *State v. Cervantes*, 92 N.M. 643, 593 P.2d 478 (Ct.App. 1979) (affiant's statement that informant

close acquaintance with the problems and traditions of our state. By necessity, we are better

acquainted with these factors than is the United States Supreme Court.

had provided correct information once before sufficient when statement revealed that information was received the week prior to the affidavit and resulted in recovery of stolen property and indictment); *Perea* 85 N.M. at 510, 513 P.2d at 1294 (statement against interest was credible). Nonetheless, given the great deference that we accord to an issuing court's determination of probable cause, *see Snedeker*, 99 N.M. at 290, 657 P.2d at 617, we conclude the court here reasonably could infer that the reference to information supplied by the informant in the past involved information that was relevant to a police investigation.

█ Unaddressed by the court of appeals, however, was whether the affidavit, standing alone, adequately stated the informant's basis of knowledge for the allegation that Cordova was selling heroin. The informant reportedly stated that Cordova had brought heroin into town and was selling it at the house in question. However, the affidavit is devoid of any indication of how the informant gathered this information. Similarly, although the affidavit states the informant has personal knowledge that "heroin users" have been at the residence, there is nothing in the affidavit to indicate the source of his knowledge, or even how the informant knows the persons in question to be "heroin users."

In *Spinelli*, the Court held the assertion that Spinelli was a known "gambler and associate of gamblers" was "but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision." 393 U.S. at 414, 89 S.Ct. at 588; *accord Baca*, 97 N.M. at 382, 640 P.2d at 488. By implication, the allegation that a person said to be a "heroin user" has been to a particular residence, unsupported by any detail as to how the informant knows the person to be a heroin user or how he knows the person has been to the residence, is entitled to little or no weight in determining whether probable cause exists to believe that heroin is to be found at that residence.

We also do not believe the affidavit contained sufficient detail concerning the alleged illegal activity to be self-verifying. Aside from a simple assertion that the heroin was brought to town by respondent, the only details in the affidavit concern a description of a man, a house, and a car parked outside that house. As with the details provided by the informant in *Spinelli*, which stated no more than that Spinelli spent a large amount of his time in an apartment that contained two phones with separate, identified numbers, the details provided in this affidavit relate to innocent facts that do not, either separately or taken as a whole, suggest illegal activity. 393 U.S. at 416, 89 S.Ct. at 589; *see also State v. Herrera*, 102 N.M. 254, 694 P.2d 510 (mere fact that residence was described in minute detail did not give rise to probable cause to believe that suspect made such residence his home), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2332, 85 L.Ed.2d 848 (1985).

The affiant's independent corroboration did not serve to establish the reliability of the informant's report. *See State v. Jones*, 96 N.M. 14, 627 P.2d 409 (1981) (unique information concerning modus operandi of crime supplied by informant and corroborated by police sufficient to establish informant's reliability); *State v. Donaldson*, 100 N.M. 111, 666 P.2d 1258 (Ct.App.), *cert. denied*, 100 N.M. 53, 665 P.2d 809 (1983) (deficiency in affidavit cured when police investigation substantially corroborated detailed information provided by informant); *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) (under *Gates*, informant's tip and surrounding facts possessed an internal coherence that sustained magistrate's finding of probable cause when informant described goods stolen in recent burglaries, knew of a police raid on a motel room that day, was recognized by police as defendant's girlfriend, and gave detailed description of alleged location of stolen goods that was corroborated by police investigation), *on remand*, *Commonwealth v. Upton*, 394 Mass. 363, 476 N.E.2d 548 (1985).

Here, the affiant verified only the infor-

mant's description of the house and car.[9] We agree with the court of appeals that the affidavit in essence "asked the magistrate to believe the informant was reliable merely because the house and car existed, and further asked the magistrate to believe that because the house and car existed, the man and the heroin probably did as well." Slip op. at 6. We hold that the affidavit in this case did not establish a substantial basis for believing the informant's report was based on reliable information as required by Rule 5–211(E) and the New Mexico Constitution. Accordingly, the decision of the court of appeals is affirmed. IT IS SO ORDERED.

SOSA, C.J., and BACA and MONTGOMERY, JJ., concur.

---

**9.** We do not address the state's contention that the police also verified the description of Cordova himself, as this did not take place until after the warrant issued. It is well settled that probable cause cannot be established by the results of the search. *State v. Baca,* 87 N.M. 12, 528 P.2d 656 (Ct.App.), *cert. denied,* 87 N.M. 5, 528 P.2d 649 (1984). A contrary rule would render the warrant requirement an empty formality, as a warrant could always be justified at trial if the search resulted in the seizure of the evidence, fruits, or instrumentalities of a crime.