UNITED STATES, Appellee,

v.

Thomas R. HESTER, Sergeant,
U.S. Army, Appellant.

No. 97–0297.
Crim.App. No. 9401985.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 16, 1997.[1]

Decided March 5, 1998.

Gierke, J., filed opinion concurring in part and in the result.

Sullivan, J., filed opinion concurring in the result.

For Appellant: *Captain T. Michael Guiffre* (argued); *Colonel John T. Phelps II, Lieutenant Colonel Michael L. Walters, Major Leslie A. Nepper*, and *Captain Angelines McCaffrey* (on brief); *Captain Mark I. Goodman*.

For Appellee: *Captain Mary E. Braisted* (argued); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch, III*, and *Captain Elizabeth N. Porras* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

In late 1994, appellant was tried by a military judge sitting alone as a general court-martial at Fort Bliss, Texas. Contrary to his pleas, he was convicted of possession of marijuana, possession of marijuana with intent to distribute, and assault, in violation of Articles 112a and 128, Uniform Code of Military Justice, 10 USC §§ 912a and 928, respectively. The convening authority approved the sentence of a dishonorable discharge, 8 years' confinement, partial forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence.

We granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE MOTION TO SUPPRESS THE EVIDENCE SEIZED FROM ROOM 103 OF THE YMCA ON 6 AUGUST 1994 BECAUSE THE SEARCH AUTHORIZATION WAS NOT SUPPORTED BY ADEQUATE PROBABLE CAUSE NOR SALVAGED BY THE GOOD–FAITH EXCEPTION TO THE EXCLUSIONARY RULE.

We hold that the military judge did not err because the military magistrate who issued the search authorization had probable cause to believe that evidence connected with criminal activity was located in the place to be searched.

FACTS

On August 6, 1994, a military magistrate orally issued authorization to search Room 103, Building 7060, located at the Young Men's Christian Association (YMCA) at Fort Bliss, Texas. A written affidavit in support of that authorization was prepared and filed 2 days later. In the affidavit, Special Agent (SA) Volz swore that an informant, Ms. Booker, told him that (1) appellant "maintained" 45 bags of marijuana *at her house;* (2) appellant intended to distribute all that marijuana; (3) appellant could be found at the YMCA in Room 103; (4) appellant told Ms. Booker that he would be "rocking" (a term Ms. Booker understood to mean making crack cocaine) and mentioned something about 30 pounds; and (5) appellant was in Room 103 with a female. SA Volz did not inform the military magistrate that Ms. Booker was angry with appellant because he was seeing another woman.

Appellant argues that the military magistrate did not have probable cause to authorize a search of Room 103 because (1) Ms. Booker had no history of reliability with the Criminal Investigation Command; (2) Ms. Booker made no statements against her interest; (3) the existence of marijuana at Ms. Booker's house had nothing to do with whether appellant possessed cocaine in Room 103 at the YMCA; (4) Ms. Booker was never in Room 103 and, therefore, obviously never observed marijuana in Room 103; (5) Ms. Booker was a "miscreant"—a drug user who was mad at appellant and jealous of "the other woman"; (6) most of the information attributed to Ms. Booker actually came from government investigators; and (7) Ms. Booker, herself, did not believe that any contraband would be present in Room 103 of the YMCA on the morning of the search because she suspected the contraband was removed 5 hours earlier.

Appellant also argues against application of the good-faith exception to the exclusionary rule because he claims SA Volz did not act in good faith. Appellant claims SA Volz did not tell the magistrate that Ms. Booker was a drug user or that she was mad at appellant, and did not tell of Ms. Booker's

belief that the contraband would probably not be found in the room after 1:00 a.m. (5 hours before the search).

Government counsel assert that, contrary to appellant's characterization, this case is not about the credibility of the informant. Rather, government counsel argue the issue is about whether military officials corroborated Ms. Booker's information and issued a valid search authorization. Government counsel correctly note that when SA Volz first requested an oral search authorization, the military magistrate refused to give his authorization until SA Volz substantiated Ms. Booker's allegations. Specifically, the magistrate wanted SA Volz to show that appellant had controlled substances at Ms. Booker's house and that appellant had a room at the YMCA. In accord with these instructions, SA Volz obtained Ms. Booker's consent to search her house and recovered the 45 bags of marijuana. He then confirmed that appellant had rented Room 103 at the YMCA.

## DISCUSSION

Under the Military Rules of Evidence, which implement the Fourth Amendment, evidence illegally seized by government agents from a protected place is inadmissible. Mil.R.Evid. 311–317, Manual for Courts–Martial, United States (1995 ed.). The equivalent of a civilian search warrant in the military is a commander's search authorization. Mil.R.Evid. 315(d)(1). To satisfy the Fourth Amendment and the Military Rules of Evidence, there must be probable cause for a search authorization, Mil.R.Evid. 315(f)(1), and the search authorization must be specific. Mil.R.Evid. 315(b)(1).

Probable cause to search requires reasonable grounds to believe evidence connected with criminal activity "is located in the place or on the person to be searched." *See* Mil. R.Evid. 315(f)(2), which applies the totality-of-the-circumstances test established by *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), to determine whether

probable cause exists. Drafters' Analysis of Mil.R.Evid. 315(f), Manual, *supra* at A22–30.

In *State v. Weston,* 494 S.E.2d 801, 802 (S.C.1997), Justice Toal, speaking for a unanimous Court, stated:

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court rejected the application of a rigid two-pronged test in which an informant's veracity and basis of knowledge were considered as separate and independent requirements to finding probable cause. Instead, the Court adopted a totality of the circumstances test where veracity and basis of knowledge were relevant to, but not inflexible requirements of, a determination of probable cause:

The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

While we have expressly adopted the *Gates* test, *see, e.g., United States v. Wood,* 25 MJ 46 (CMA 1987), this case would satisfy even the more rigid test under *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Our adoption of the *Gates* test does not negate the value of the factors established in *Spinelli* and *Aguilar.*[2] Indeed, if the circumstances of a case constitute probable cause under the higher *Aguilar–Spinelli* analysis, then there is necessarily probable cause under the *Gates* test. Justice White, concurring in *Gates,* recognized that the factors named in *Aguilar–Spinelli* remain significant to probable-cause analysis.[3] A number of state courts rely on the considerations of probable cause discussed in *Spinelli* and

---

2. *Aguilar* "remains good advice for those deciding the existence of probable cause, especially for uncorroborated tips, but is not an exclusive test." Drafters' Analysis of Mil.R.Evid. 315(f), Manual for Courts–Martial, United States (1995 ed.) at A22–30.

3. 462 U.S. 213, 272–74, 103 S.Ct. 2317, 2350–51, 76 L.Ed.2d 527 (1983).

*Aguilar.*[4] In addition, the Drafters' Analysis of Mil.R.Evid. 315(f) supports use of *Aguilar–Spinelli* factors in making probable-cause determinations.[5]

 Under the *Aguilar–Spinelli* two-pronged test, there must be (1) a basis for the informant's knowledge and (2) demonstrated reliability of the information. *Spinelli v. U.S.* and *Aguilar v. Texas,* both *supra.* The Government may satisfy the basis-of-knowledge prong with a statement from the defendant.[6] In this case, appellant told the informant, Ms. Booker, that he had 45 bags of marijuana in her home which he was going to sell. He also told Ms. Booker that he was going to the YMCA to make crack cocaine.

 Moreover, corroboration satisfies both the basis-of-knowledge prong and the reliability prong of the *Aguilar–Spinelli* test.[7] A classic example of adequate corroboration is the type found in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), cited in both *Gates,* 462 U.S. at 242–44, 103 S.Ct. at 2334–35, and *Spinelli,* 393 U.S. at 416–19, 89 S.Ct. at 589–91.

In *Draper,* an informant told police that Draper would arrive by train from Chicago in the coming 2 days; described Draper's appearance and how he would be dressed; said that Draper would walk with a fast gait; explained Draper would be carrying a tan zipper bag; and stated that Draper would be carrying heroin. 358 U.S. at 309, 79 S.Ct. at 331. The officer corroborated four of these five allegations. The Supreme Court held that there was adequate corroboration to establish probable cause. *Id.* at 310, 314, 79 S.Ct. at 331, 333.

*Gates* involved a search of appellant's home and car in Bloomingdale, Illinois. Prior to the search, the Police Department received an anonymous handwritten letter which read as follows:

"This letter is to inform you that you have a couple in your town who strictly make their living on selling drugs. They are Sue and Lance Gates, they live on Greenway, off Bloomingdale Rd. in the condominiums. Most of their buys are done in Florida. Sue his wife drives their car to Florida, where she leaves it to be loaded up with drugs, then Lance flys down and drives it back. Sue flys back after she drops the car off in Florida. May 3 she is driving down there again and Lance will be flying down in a few days to drive it back. At the time Lance drives the car back he has the trunk loaded with over $100,000.00 in drugs. Presently they have over $100,000.00 worth of drugs in their basement.

"They brag about the fact they never have to work, and make their entire living on pushers.

---

4. *See, e.g., State v. Jacumin,* 778 S.W.2d 430 (Tenn.1989); *State v. Cordova,* 109 N.M. 211, 784 P.2d 30 (1989); *State v. Jones,* 706 P.2d 317 (Alaska 1985); *State v. Jackson,* 102 Wash.2d 432, 688 P.2d 136 (1984).

5. The Drafters' Analysis, *supra* at A22–29, states that to determine reliability of an informant one may consider the following: "prior record as a reliable informant," any "corroborating detail," any "statement against interest," and the informant's status as a "good citizen."

6. *United States v. Johnson,* 23 MJ 209 (CMA 1987)(incriminating statement from defendant concerning theft satisfied probability test); *cf. McCarthy v. State,* 22 Md.App. 722, 325 A.2d 132, 137 (1974)(remarking on reliability test, court stated there was "no reason [for the accomplice] ... to ... state [that the drugs were kept at the defendant's house] if it were not true.").

7. In *Spinelli v. United States,* 393 U.S. 410, 415–16, 89 S.Ct. 584, 588–89, 21 L.Ed.2d 637 (1969),

Justice Harlan indicates that independent corroboration may satisfy both prongs of the test. This view seems to be accepted by the entire Court. *See also United States v. Wallace,* 34 MJ 353, 356–58 (CMA 1992)(probable cause to arrest appellant where informant stated drug dealer sold him drugs after visit with appellant and drug dealer admitted appellant was his source); *United States v. Alexander,* 34 MJ 121, 125 (CMA 1992)(probable cause to search after drug dog alerted at appellant's room and commander received tip of drug activity in appellant's unit); *United States v. Wood, supra* (probable cause to search appellant where informant provided details of appellant engaging in drug activities and Master Chief verified appellant was at unusual place informant described); *United States v. Phinizy,* 12 MJ 40, 41–42 (CMA 1981)(probable cause to search appellant where agents provided informant with marked $20 bill and informant returned with cocaine and details of what room drug transaction took place in and what appellant was wearing).

"I guarantee if you watch them carefully you will make a big catch. They are friends with some big drug dealers, who visit their house often."

462 U.S. at 225, 103 S.Ct. at 2325.

Upon receiving this letter, a detective discovered that an Illinois driver's license had been issued to one Lance Gates, residing in Bloomingdale, Illinois. *Id.* at 225–26, 103 S.Ct. at 2325–26. A confidential informant who examined certain personnel records gave the detective a more recent address for Gates. *Id.* at 226, 103 S.Ct. at 2325–26. The detective also learned from a police officer that "L. Gates" was scheduled to fly on a specific flight to West Palm Beach, Florida, scheduled to depart Chicago on May 5, 1978. Drug Enforcement Administration (DEA) agents were informed of this and had that flight under surveillance. They reported that Gates boarded the flight, and DEA agents in Florida "observed him arrive in West Palm Beach and take a taxi to the nearby Holiday Inn." They reported that Gates went to a room which was registered to a Susan Gates. The next day, Gates and an unidentified woman left the motel in a vehicle bearing Illinois license plates and drove north on an interstate frequently used by travelers to the Chicago area. Later, investigators determined this car was registered and owned by Gates. *Id.*

Given all this corroboration, the Supreme Court held as follows:

> The showing of probable cause in the present case was fully as compelling as that in *Draper*. Even standing alone, the facts obtained through the independent investigation of [the detective] and the DEA at least suggested that the Gateses were involved in drug trafficking. In addition to being a popular vacation site, Florida is well-known as a source of narcotics and other illegal drugs.... Lance Gates' flight to West Palm Beach, his brief, overnight stay in a motel, and apparent immediate return north to Chicago in the family car, conveniently awaiting him in West Palm Beach, is as suggestive of a prearranged drug run, as it is of an ordinary vacation trip.

462 U.S. at 243, 103 S.Ct. at 2335 (citations omitted).

The Supreme Court noted that the letter contained a "range of details relating not just to easily obtained facts and conditions existing at the time of the trip, but to future actions of third parties ordinarily not easily predicted." *Id.* at 245, 103 S.Ct. at 2335–36. The Court stated, "[T]here was a fair probability that the writer of the anonymous letter had obtained his entire story either from the Gateses or someone they trusted. And corroboration of major portions of the letter's predictions provides just this probability." *Id.* at 246, 103 S.Ct. at 2336.

Similarly, there was corroboration of Ms. Booker's statement in this case. Specifically, SA Volz confirmed that appellant had rented Room 103 at the YMCA. Moreover, the magistrate did not authorize a search until SA Volz verified Ms. Booker's information. SA Volz did so by obtaining Ms. Booker's consent to a search of her apartment where he found the 45 bags of marijuana. This corroboration satisfies the basis-of-knowledge prong and the reliability prong of the *Aguilar–Spinelli* test.

Thus, the military magistrate had probable cause to issue the search authorization, even under the more stringent *Aguilar–Spinelli* probable cause test. Appellant's own statements to Ms. Booker established her basis of knowledge. SA Volz's corroboration also satisfied the basis-of-knowledge prong, as well as the reliability prong.

■ Additionally, in order for there to be reasonable grounds to believe that the evidence will be located at the place to be searched, the information constituting probable cause must be fresh in time. That is, the information must not be so out-of-date that circumstances likely would have changed at the time of the search authorization. "[P]robable cause to search a place does grow stale with the passage of time," whereas probable cause to apprehend does not "absent intervening exculpatory facts." *United States v. Lopez*, 35 MJ 35, 38 (CMA 1992). Ms. Booker's information was fresh. Her report indicated that appellant was go-

ing to the YMCA that same day to make crack cocaine.

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge EFFRON concur.

GIERKE, Judge (concurring in part and in the result):

To the extent that the majority opinion suggests that this Court decides the question of probable cause *de novo,* I disagree. This Court, following the lead of the Supreme Court, has signaled its preference for search authorizations over warrantless searches by adopting a more deferential standard of review for the former. The commander or magistrate issuing the search authorization determines whether there is probable cause; an appellate court reviews that determination "to ensure that the commander 'had a "substantial basis for ... conclud[ing]" that probable cause existed.'" *United States v. Figueroa,* 35 MJ 54, 56 (CMA 1992), quoting *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

In all other respects I agree with the majority opinion. Accordingly, I concur in the result.

SULLIVAN, Judge (concurring in the result):

I would affirm this case on the basis of the Supreme Court decisions in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The majority opinion's obsession with the *Aguilar–Spinelli* test (16 separate citations to either or both cases in the majority's relatively short opinion), even though jettisoned by the Supreme Court and this Court long ago, is somewhat mystifying. *See United States v. Wood,* 25 MJ 46 (CMA 1987). Moreover, it appears strange for the majority to place such emphasis on advisory comments by the drafters of the Manual for Courts-Martial, United States, 1984, in the course of constitutional litigation on the issue of probable cause at this Court! *See* Drafters' Analysis to Mil.R.Evid. 315(f), Manual, *supra,* at A22-29. The tail should not wag the dog. The Supreme Court's holding in *Gates* should be the focus of our analysis in this case.

Based on the totality of the circumstances (*see Illinois v. Gates, supra*), I conclude that probable cause existed in this case to search Room 103, Building 7060, at Fort Bliss, Texas. *See Ornelas v. U.S., supra* (*de novo* standard of review). Ms. Booker provided a detailed statement against her interest which supported the search of appellant's room. It was corroborated by (1) the discovery of 45 bags of marijuana at her apartment; (2) verification that appellant was in Room 103 at the YMCA; (3) a positive field test on that marijuana; and (4) appellant's residence at the YMCA. The challenged seizure was reasonable and lawful under the Fourth Amendment. In my view, the law enforcement officials and the military magistrate acted in a reasonable and proper manner under the circumstances of this case.