# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class JASON A. CLOSE**
**United States Army, Appellant**

ARMY 20140984

Headquarters, U.S. Army Fires Center of Excellence and Fort Sill
Jeffery R. Nance, Military Judge (arraignment and motions hearing)
Jeffrey W. Hart, Military Judge (trial)
Colonel Mark W. Seitseinger, Staff Judge Advocate (pretrial)
Colonel David E. Mendelson, Staff Judge Advocate (post-trial)

For Appellant: Captain Michael A. Gold, JA (argued); Major Andres Vazquez, Jr., JA; Captain Michael A. Gold, JA (on brief); Lieutenant Colonel Melissa R. Covolesky, JA; Captain Katherine L. DePaul, JA; Captain Michael A. Gold, JA (on reply brief); Captain Katherine L. DePaul, JA; Captain Michael A. Gold, JA (on supplemental brief).

For Appellee: Captain Tara O'Brien Goble, JA (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie, III, JA; Major Anne C. Hsieh, JA; Major Steve T. Nam, JA (on brief); Major Michael E. Korte, JA.

27 June 2017

---------------------------------------------------------------
MEMORANDUM OPINION ON FURTHER REVIEW
---------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

PENLAND, Judge:

In this decision, prompted by appellant's motion to reconsider, we conclude appellant's trial defense team rendered ineffective assistance of counsel, where the team did not move to suppress evidence obtained pursuant to a search warrant.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of possessing child pornography, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2012)

[hereinafter UCMJ].[1]  The military judge sentenced appellant to a dishonorable discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved only so much of the adjudged sentence as provided for a dishonorable discharge, confinement for twenty-three months, forfeitures of all pay and allowances, and reduction to the grade of E-1.  Appellant was credited with sixty days against the sentence of confinement.

This case is before us pursuant to appellant's motion to reconsider our summary disposition in *United States v. Close*, ARMY 20140984, 2017 CCA LEXIS 175 (Army Ct. Crim. App. 22 Mar. 2017) (summ. disp.).[2]  In their reconsideration motion, appellate defense counsel alleged ineffective assistance of counsel for the first time, writing:

> Reconsideration is appropriate in light of the Court of Appeals for the Armed Forces [CAAF] decision in *United States v. Nieto*, [76 M.J. 101 (C.A.A.F. 2017)].  Trial defense counsel's failure to move to suppress all of the evidence seized and subsequently examined from appellant's off-post residence as an unlawful search and seizure is a material legal and factual matter that was not previously briefed and was overlooked by this court in conducting its review under Article 66(c), Uniform Code of Military Justice (UCMJ).

## BACKGROUND

On 29-30 November 2012, appellant and Sergeant (SGT) AD were in the battalion area watching movies on appellant's laptop computer, which was connected to a projector.  As appellant was called away for another duty, he allowed SGT AD to continue using the laptop to watch another movie.  While he looked for movies, SGT AD stumbled upon file labels indicating their associated files contained child pornography (one of which started with "9-year-old . . .").  Sergeant AD stopped what he was doing without viewing the content of the files and alerted his leaders, who in turn referred the matter to law enforcement investigators.

---

[1] Specification 1 involved appellant's laptop and Specification 2 involved appellant's digital card.  Additionally, appellant was acquitted of rape and forcible sodomy of a child under the age of twelve and two specifications of indecent acts with a child.

[2] We directed oral argument, which we heard on 24 May 2017.

In a 30 November 2012 sworn statement to a Criminal Investigation Command (CID) agent, SGT AD relayed what he had seen on appellant's laptop.[3] CID Special Agent JH also interviewed appellant, but he did not examine the laptop. Based on SGT AD's statement and appellant's interview, SA JH prepared an affidavit on 30 November 2012 requesting a search warrant for appellant's residence in Lawton, Oklahoma. A federal magistrate judge issued the warrant the same day.[4] In pertinent part, the affidavit stated:

> This office interviewed SGT [AD] . . . who stated he and [appellant] were watching a movie on [appellant's] laptop when [appellant] was instructed to report to the [First Sergeant]. SGT [AD] stated he finished the movie and attempted to find another movie to watch from [appellant's] hard drive and found a folder with "disturbing" names. SGT [AD] stated he believed the files contained child pornography based off of their names and subsequently notified his platoon sergeant. (See attached Sworn Statement of SGT [AD])
>
> This office interviewed [appellant] who stated he knew he had "illegal pornography" on his computer but thought he deleted it all. [Appellant] stated he was living with Ms. [AM] when she told him she downloaded "illegal child pornography" onto his laptop in order to blackmail him for $700. [Appellant] stated he searched his computer and found what he believed to be thousand's of files including pictures and videos of "illegal pornography" containing girls "under 10 years old". [Appellant] stated he moved the files to a folder named "wipe" and deleted them through a program called "C Cleaner," which deletes and overwrites files but must have missed some of the "torents".
>
> This office was granted consent by [appellant] to conduct a digital forensic examination of his personal Hewlett Packard laptop. However, [appellant] did not consent to the collection and search of digital media at his quarters or on his person. [Appellant] invoked his legal rights and requested a lawyer.

---

[3] We granted government appellate counsel's motion to attach SGT AD's statement.

[4] We granted defense appellate counsel's motion to attach the affidavit and warrant.

During the course of the interview, [appellant] stated that he currently resides in a trailer house located at 40 NE 25th Street, Lot #61, Lawton, 73507. He also stated during the interview that he is the only person residing in the trailer house located at 40 NE 25th Street, Lot #61, Lawton, 73507. During the interview [appellant] demonstrated a vast knowledge of computer technology and he even stated that he was "technically inclined".

Based on my experience as a CID Special Agent, suspects treat their Child Pornographic media as prized possessions and rarely delete or destroy the media. Further, based on my experience Forensic Computer Examiners have great success in recovering images, which have been deleted by the user from the unallocated space of a hard drive utilizing forensic software. Suspects are also known to keep images and/or videos on numerous external devices for the ease of viewing the child pornography on different computers or devices.

It is imperative to the conclusion of this allegation that authorization be granted to conduct a search of computer systems including central processing units; internal and peripheral storage devices such as fixed disks, external hard disks, floppy disk drives and diskettes, optional storage devices or other memory storage devices; compact disc, digital versatile discs; and all other digital media storage devices collected from [appellant's] living quarters.

And the seizure of: Computers, hard drives, CD's, DVD's, thumb drives, SD cards, cameras, PDA's, cellular phones, all other digital storage devices for text, graphics, images, multimedia files, electronic mail messages, and other data including deleted files and folders, containing material related to the sexual exploitation of minors; and/or material depicting apparent or purported minors engaged in sexually explicit conduct; and data and/or information used to facilitate access to, possession, distribution, and/or production of such materials.

4

Special Agent JH seized appellant's laptop pursuant to appellant's consent and searched his residence pursuant to the warrant. Special Agent JH seized from the residence "everything that was capable of storing digital media files." This included a Liteon desktop computer and a secure digital card [card] from a PlayStation device. Digital forensic examination (DFE) of the laptop and card revealed images and videos of child pornography; similar examination of the desktop computer yielded numerous images of erotic child anime and significant download activity over a long period of time with respect to these images (in other words, it was clear the numerous images had been obtained via some sort of deliberate downloading).

In April 2013, before the DFE was complete, CID interviewed Ms. AM, who described seeing child pornography in the spring of 2012 on appellant's desktop computer, which was located in a residence they previously shared. Ms. AM described the desktop as follows:

> Regarding the desk-top computer on which I found the kid porn, like I said, [appellant] built it and it did not have side panels on it. It did have a giant . . . external storage device attached to the computer. The tower might have been a Dell, and [appellant] took it with him when he got his stuff and moved out. I have no idea where it is or what was ever done with it.[5]

Though appellant was not charged with possessing child pornography on the desktop computer, the government notified appellant on 15 August 2014 of its intent to introduce this evidence at trial under Military Rule of Evidence [hereinafter Mil. R. Evid.] 404(b). On 28 August 2014, appellant's trial defense counsel filed a pretrial motion seeking to exclude this evidence of uncharged misconduct. The military judge acknowledged the motion and government counsel's response during a pretrial session on 15 September 2014; however, at the parties' request, he deferred ruling until trial was underway. The pleadings make clear Ms. AM's expected testimony would be the source of this disputed evidence.

In another pretrial session on 27 October 2014, appellant stated his desire to be represented by his newly-retained civilian defense counsel, JW, who was present and announced his qualifications. The military judge repeated his intent to decide the uncharged misconduct issues "as those arise in trial, if they arise in trial." Ultimately though, while she was included on the government's witness list, Ms. AM did not testify at the trial approximately six weeks later. Her absence essentially mooted the defense's uncharged misconduct motion.

---

[5] We granted government appellate counsel's motion to attach Ms. AM's statement.

The prosecution's case was relatively straightforward, consisting largely of chain-of-custody testimony and forensic testimony regarding items found on appellant's laptop, card, and desktop. The laptop and card contained images and videos of child pornography, while the desktop computer contained numerous images of child anime. The child pornography on the laptop was downloaded at approximately 1540 hours, 29 November 2012.

The military judge considered the evidence from the laptop and card without any evidentiary limitation. In contrast, he considered the evidence from the desktop computer for limited purposes: the anime images, which "may be viewed as improper or [] somewhat similar to child pornography, the procedures for downloading such images is likely similar to the procedures of download[ing] or accessing child pornography;" and found their presence on the desktop computer "highly probative as to whether [appellant] wrongfully possessed images on his devices."

The trial defense team did not challenge the search, and neither the warrant nor its associated affidavit were admitted at trial.

We granted appellate defense counsel's motion to attach an affidavit from appellant's trial defense counsel, Captain (CPT) JK, who wrote in pertinent part:

> . . . I have been unable to speak to the civilian defense counsel, Mr. [JW] . . . Although we contemplated raising the issue of an unreasonable search and seizure with respect to [SGT AD]'s initial search, I do not remember identifying any issues, or preparing any motion to suppress regarding the federal magistrate's search warrant of appellant's home or the underlying affidavit submitted by Special Agent [JH]. Our trial strategy . . . was to show that the government failed to prove that the possession was knowing and wrongful. Had we identified any issues with or thought to make a motion to suppress the evidence obtained from the appellant's home based on the federal magistrate's warrant and underlying affidavit we would have done so.

We granted appellate government counsel's motion to attach an affidavit from appellant's civilian defense counsel, JW, who prepared an affidavit after CPT JK's and wrote in pertinent part:

> . . . I have spoken to military defense counsel, CPT [JK]

> In reviewing my case file, I found a document that was titled "to do list" which included numerous motions, to include a motion to suppress the search of the home based on the search warrant issued on November 30, 2012. It is my recollection that myself and CPT [JK], in considering the motion to suppress the search of the house based on the search warrant, also took into consideration other evidence and statements that had been gathered by the investigation to include, most importantly, the statement from [AM] taken on April 11, 2013. Within that statement Ms. [AM] had stated that in the spring of 2012, before the accused moved out, he had allowed Ms. [AM] to use an extra phone he had. Ms. [AM] stated that when she went to clean off the phone she discovered numerous messages and other items that had been saved on the phone, to include what appeared to be numerous folders inside of folders in the phone. Upon opening the phone she discovered what appeared to be suspicious pictures, some labeled "RAWR" containing what appeared to be hundreds, maybe even thousands, of pictures of young children who were naked and were posing or engaging in sex-like acts of sexual intercourse. Based on the additional evidence that had been discovered, to include the potential testimony of Ms. [AM], myself and CPT [JK] decided that the motion to suppress might be successful but that the evidence would have been inevitably discovered through the testimony presented by Ms. [AM].

> Therefore it is clear from our notes and the list of motions indicated that it was discussed between myself and CPT [JK] that we do a motion to suppress the search of the house but decided not to based on other evidence that would have led to discovery of the same evidence that had been seized through the warrant.

## LAW AND DISCUSSION

"Claims of ineffective assistance of counsel are reviewed de novo." *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (internal citations omitted).

In evaluating allegations of ineffective assistance of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court found that the Sixth Amendment entitles criminal defendants to the "effective assistance of counsel"—that is, representation that does

not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland*, 466 U.S. at 686. Specifically in a case like appellant's where a search and seizure occurred:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U.S. 365, 376 (1986).

Inquiry into an attorney's representation must be "highly deferential" to the attorney's performance and employ "a strong presumption" that counsel's conduct falls within the wide range of professionally competent assistance. *Id.* at 688-89; *see United States v. Premo*, 562 U.S. 115, 123 (2011) ("The Court of Appeals was wrong to accord scant deference to counsel's judgement. . . ."). Our superior court has applied this standard to courts-martial, noting that to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate: 1) that his counsel's performance was deficient; and 2) that this deficiency resulted in prejudice. *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)).

We judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690. In making that determination, we consider the totality of the circumstances, bearing in mind "counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work . . . [and] recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

By not filing a motion to suppress the evidence described above, the trial defense team waived a complaint regarding its admissibility. Rule for Courts-Martial [hereinafter R.C.M.] 905(b)(3) (motions to suppress evidence shall be made before entry of pleas); R.C.M. 905(e) (failure to timely file a motion to suppress evidence constitutes waiver, absent good cause shown to the military judge, who may grant relief from the waiver).

Appellate defense counsel indicated at oral argument that *Nieto's* publication prompted their focus on the search issue in this case. On the related issue of whether *Nieto* broke new ground in search and seizure jurisprudence, appellate

defense counsel essentially conceded that it did not. We agree and emphasize that, had *Nieto* established a new legal principle in 2017, it would be manifestly unreasonable to upend the result of a criminal trial because trial defense counsel did not account for that yet-unknown principle in 2014. Instead, just as the trial defense team failed to correctly identify the constitutional issues presented by the search warrant in this case, so too did the appellate defense team until our superior court reminded practitioners of extant fundamental constitutional protections against unreasonable search and seizure. Specifically, as in this case, "a [law enforcement officer's] profile alone without specific nexus to the person concerned cannot provide the sort of articulable facts necessary to find probable cause to search[.]" *Nieto*, 76 M.J. at 106 (quoting *United States v. Macomber*, 67 M.J. 214, 220 (C.A.A.F. 2009)).

Mindful of our duty to give great deference to reasoned, tactical decisions of defense counsel at trial,[6] we can find no sound rationale in either CPT JK's or JW's affidavit. Captain JK does not recall identifying an issue with the search warrant. JW's affidavit, on the other hand, offers a rather muddled and ultimately unhelpful recollection of his reason for not filing a suppression motion. His affidavit seems to conflate the concept of inevitable discovery—which the record in this case does not support—with the idea that the factfinder was going to hear Ms. AM's testimony anyway. In fact, Ms. AM's testimony in this case was far from inevitable. First, the defense moved to exclude it; and, second, the government did not call her to testify. Considering these affidavits in light of the warrant application's lack of showing any particularized "nexus" between appellant's laptop and his other digital media devices, we conclude the trial defense team was deficient.

We further conclude appellant has carried his burden in establishing a reasonable probability that, absent the deficiency, his trial would have yielded a substantially more favorable result with respect to the second child pornography specification. Based on fundamental Fourth Amendment principles, including the requirement that a search warrant must be anchored in probable cause to find evidence of a crime in the place to be searched,[7] we are confident the military judge would have granted a defense motion to suppress the results of the search and seizure in this case. *See United States v. Jameson*, 65 M.J. 160 (C.A.A.F. 2007) ("[T]he decisional issue is whether Appellant has carried his burden to show that his counsel would have been successful if he had filed a timely motion preventing the admission of [the evidence]."). However, we disagree with appellate defense counsel's argument to the effect that, without the evidence gained from the search of

---

[6] *See Premo*, 562 U.S. at 123.

[7] *See United States v. Hester*, 47 M.J. 461, 463 (C.A.A.F. 1998); *United States v. Clayton*, 68 M.J. 419, 424 (C.A.A.F. 2010).

his home, appellant would have likely been acquitted of knowingly and wrongfully possessing child pornography on his laptop, which was downloaded the day before the search occurred.

## CONCLUSION

The finding of guilty of Specification 2 of Charge III is set aside and that Specification is DISMISSED. The remaining finding of guilty is affirmed.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). We are confident that based on the entire record and the child pornography appellant knowingly and wrongfully possessed on his laptop, the military judge would have imposed a sentence of at least that which was approved by the convening authority and accordingly we AFFIRM the sentence.

We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

Senior Judge CAMPANELLA and Judge HERRING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

10