**UNITED STATES, Appellee,**

v.

**Brian M. LIGHT, Sergeant,
U.S. Army, Appellant.**

No. 97–0910.
Crim.App. No. 9500318.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 5, 1998.

Decided July 7, 1998.

For Appellant: *Kevin B. Miller* (argued); *Captain Paul Fiorino* (on brief).

For Appellee: *Major Lyle D. Jentzer* (argued); *Colonel Joseph E. Ross* and *Lieutenant Colonel Frederic L. Borch* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted by a military judge at Fort Hood, Texas, of larceny of military property and

188

false swearing (2 specifications), in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. The convening authority approved the sentence of a dishonorable discharge, 5 years' confinement, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. We granted review of the following issues:

## I.

WHETHER THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS ERRED IN HOLDING THAT THE TEXAS JUSTICE OF THE PEACE HAD LEGAL AUTHORITY TO ISSUE THE WARRANT PURSUANT TO TEXAS CODE OF CRIMINAL PROCEDURE.

## II.

WHETHER THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS ERRED IN HOLDING THAT MIL.R.EVID. 311(b)(3) AND THE GOOD–FAITH DOCTRINE SAVE AN ILLEGAL SEARCH.

## III.

WHETHER THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS ERRED IN HOLDING THAT POLYGRAPH EVIDENCE CAN BE USED TO SUPPORT THE SEARCH WARRANT IN QUESTION PURSUANT TO MIL.R.EVID. 707.

## IV.

WHETHER THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS ERRED IN HOLDING THAT, SHOULD THE POLYGRAPH EVIDENCE HAVE BEEN EXCLUDED, THE TOTALITY OF THE CIRCUMSTANCES WAS SUFFICIENT TO SUPPORT A FINDING OF PROBABLE CAUSE FOR THE SEARCH WARRANT IN QUESTION.

Excising the polygraph evidence, we hold that the Texas Justice of the Peace (JP) had legal authority and probable cause to authorize a search of appellant's apartment.

## FACTS

On October 19, 1994, after an overnight training exercise, appellant was placed in charge of a detail that was to assist in the turn-in of sensitive items, including six sets of night-vision goggles. The sensitive items were transported to the arms room. However, the armorer was not present, so the items were placed just outside the door. At approximately 1:15 p.m., appellant dismissed the detail for lunch and instructed Private First Class (PFC) Brokaw and PFC Herrera to guard the items in rotations. Appellant then left for lunch by himself.

The sensitive items sat in the hallway outside the arms room from approximately 1:30 p.m. to 3:00 p.m. At approximately 6:30 p.m. that same day, appellant's company commander learned that one set of the night-vision goggles was missing. An investigation revealed that PFC Brokaw did not maintain eye contact with the items during his watch because he was cleaning his weapon. When appellant went to lunch, he walked past the sensitive items and exited the building through the back door without PFC Brokaw seeing him.

Having no success in locating the missing goggles, appellant's commander recalled all of his soldiers at around midnight. None of the soldiers directly involved with transporting the sensitive items had been released. The next morning the entire battalion was locked down.

Appellant's pass privileges were pulled, and he was not allowed to leave the post. From the time appellant returned from lunch on October 19 until November 10, 1994, the date when his apartment was searched pursuant to a search warrant, appellant was unable to return to his apartment without an escort.

On October 20, 1994, with appellant's consent, Criminal Investigation Command (CID) agents unsuccessfully searched his apartment and vehicle for the missing goggles.

Searches of the rooms and privately owned vehicles of the other members of appellant's detail also failed to locate the missing goggles.

On October 21, 1994, appellant voluntarily submitted to a polygraph examination containing the following relevant questions: (1) Did you plan with anyone to steal those goggles? (2) Did you steal those goggles? (3) Did you hide those goggles? and (4) Did you have them in your hands after they were reported stolen? The polygraph examiner opined that the examination indicated appellant was being deceptive when he responded to those questions in the negative.

On November 10, 1994, JP Hardin issued a search warrant for appellant's apartment based on information in the affidavit attached to the warrant. The essential information in the probable-cause affidavit was as follows:

(1) Appellant was one of the soldiers who had been in the area of the arms room when the goggles disappeared.

(2) His whereabouts that afternoon could not be completely accounted for.

(3) Appellant commented to several soldiers that he wanted to secure a set of night-vision goggles before leaving the Army in the near future.

(4) A search of his apartment on 20 October 1994 pursuant to his consent had met with negative results. (Only the obvious locations were searched on that occasion.)

(5) Appellant had told a friend after his house had been searched and nothing found that "he did not have the night-vision goggles, but if he did, nobody would find them."

(6) Appellant told the maintenance man at his apartment that CID was watching his house and he would appreciate it if no one entered his apartment to change anything like air filters, smoke alarms, etc., until the investigation was finished.

(7) On 21 October, a polygraph test was administered to appellant. The test results indicated appellant's responses were deceptive.

(8) Appellant was restricted to the barracks after the night-vision goggles were reported missing and was accompanied by an escort on visits to his apartment after his restriction went into effect.

During the search, investigators found the missing goggles in the air conditioning motor fan housing unit in appellant's apartment.

## DISCUSSION OF ISSUE I

■ Under Texas law, a JP may issue search warrants in most circumstances. Tex. Code Crim. P. Ann. art. 2.09 (West 1977 and Supp.1998). There are twelve categories of items for which search warrants may be issued. Generally, they are: (1) "property acquired by theft"; (2) property designed for use in a crime; (3) arms and munitions kept for insurrection; (4) prohibited weapons; (5) gambling devices; (6) obscene materials; (7) illegal drugs; (8) property that one may not lawfully possess; (9) implements used in the commission of a crime; "(10) property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense; (11) persons; or (12) contraband subject to forfeiture . . . ." Art. 18.02. Item (10) is generally described as an evidentiary warrant, which may only be issued by a municipal judge of a court of record who is an attorney licensed by the state or by a judge of a county, district, or higher court. Art. 18.01(c).

Appellant argues that JP Hardin, who issued the search warrant for his apartment, lacked the authority to do so under the Texas Code of Criminal Procedure. Appellant contends that the warrant which authorized the search of his off-base apartment was an evidentiary warrant which could not be issued by JP Hardin because he was not a licensed attorney.

JP Hardin was called to testify on the motion to suppress. He testified that he had issued the warrant for "stolen property," which is the first item for which a warrant can issue under Article 18.02. The military judge found that, because the warrant was issued for stolen property, the JP had authority to issue the warrant, despite the fact that he was not a licensed attorney. The court below agreed. Unpub. op. at 3.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

This amendment is designed to protect a citizen's privacy by placing a judicial officer between law enforcement authorities and a privacy interest.

Mil.R.Evid. 315(b)(2), Manual for Courts-Martial, United States (1995 ed.), defines a search warrant as "an express permission to search and seize issued by competent civilian authority." Whether JP Hardin was "competent" to issue the warrant in question depends upon an interpretation of the Texas Code of Criminal Procedure.

We hold that JP Hardin properly issued the warrant to seize an item listed in Article 18.02(1) of the Texas Code of Criminal Procedure, regardless whether the warrant may also be called an evidentiary warrant. A review of the warrant in question shows that it was a warrant to seize "stolen U.S. government property."

Article 18.02 distinguishes between searches for contraband, searches of a person, and evidentiary searches. Evidentiary searches, unlike searches for contraband, might result in indiscriminate searches. In *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the Supreme Court held that "mere evidence," as well as contraband and proceeds of a crime, could be seized pursuant to a valid warrant. *Hayden* thus negated the assumption in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), that papers could not be lawfully seized. However, Article 18.02(10) continues part of that prohibition by not allowing a search warrant to be issued for "personal writings by the accused." The concerns of an evidentiary search were not present in this case because the officers were seeking stolen property, specifically, stolen

night-vision goggles. We need not discuss Issue II based on our holding.

### DISCUSSION OF ISSUE III

Appellant argues that the court below erred by holding that polygraph evidence could be used to support the search warrant in question. The court below stated:

> We reject appellant's argument that polygraph evidence cannot be used to support a finding of probable cause. While we have not found, or been cited to, military precedent on this point, federal case law indicates that polygraph evidence may be used in determining probable cause. *See Bennett v. City of Grand Prairie Texas*, 883 F.2d 400 (5th Cir.1989)(polygraph evidence can make up the "totality of the circumstances" supporting probable cause); *Prokey v. Watkins*, 942 F.2d 67 (1st Cir.1991) (court notes with approval that evidence supporting probable cause included polygraph evidence); and *Booker v. Ward*, 905 F.Supp. 483 (N.D.Ill. 1995)(notes that under federal law polygraph results can be used in determining probable cause). We see no basis to depart from federal precedent in this case. Mil.R.Evid. 101(b).

Unpub. op. at 3–4.

When polygraph evidence is used to support a search warrant (particularly one issued by a civilian authority), the case law relied upon by the lower court suggests there should be no prohibition on using polygraph evidence to support a probable-cause determination by the trial judge at a court-martial. However, there is a tension between the Manual provisions. Mil.R.Evid. 104(a) provides that a military judge "is not bound by the rules of evidence except those with respect to privileges" when making determinations on preliminary questions like the admissibility of evidence. On the other hand, Mil.R.Evid. 707 provides:

> Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence.

Mil.R.Evid. 707 is an adaptation of § 351.1(a) of the California Evidence Code (West 1995 and Supp.1998), which provides:

> Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence in any criminal proceeding, *including pretrial and post conviction motions and hearings,* or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court, unless all parties stipulate to the admission of such results.

(Emphasis added.)

The Drafters' Analysis of Mil.R.Evid. 707, Manual, *supra* at A22–48, states in part:

> Rule 707 is new and is similar to Cal.Evid. Code 351.1 (West 1988 Supp.). The Rule prohibits the use of polygraph evidence in courts-martial and is based on several policy grounds. There is a real danger that court members will be misled by polygraph evidence that "is likely to be shrouded with an aura of near infallibility". *United States v. Alexander,* 526 F.2d 161, 168–169 (8th Cir.1975) To the extent that the members accept polygraph evidence as unimpeachable or conclusive, despite cautionary instructions from the military judge, the members' "traditional responsibility to collectively ascertain the facts and adjudge guilt or innocence is preempted". *Id.*

Based on our holding in this case, we need not address the ambiguity in the rules. The President may choose to clarify Mil.R.Evid. 707 in the future.

## DISCUSSION OF ISSUE IV

■ Appellant argues that the court below erred in holding that, even had the polygraph evidence been excluded, the totality of the circumstances was sufficient to support a finding of probable cause. That court opined:

> Moreover, even if the polygraph evidence were excluded in this case, we find that under the "totality of the circumstances" there was more than sufficient evidence to support the magistrate's determination that probable cause existed to issue the warrant. Mil.R.Evid. 315; *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Despite the presence of some information that could be viewed as undercutting probable cause, appellant's curious and damning comments, and the limited access that he had to the apartment after the "lock down," overwhelmingly justified the decision to issue the warrant.

Unpub. op. at 4. We agree.

■ "Probable cause to search exists when there is a reasonable belief that … property or evidence sought is located in the place … to be searched." Mil.R.Evid. 315(f)(2). Probable cause to search is dependent on "the timeliness of the information and the relationship between the crime objects and place to be searched." *United States v. Lopez,* 35 MJ 35, 38 (CMA 1992); *see also United States v. Wallace,* 34 MJ 353, 357 (CMA 1992) ("[T]ime may be a factor in determining probable cause to believe whether the evidence sought will be found in the place to be searched.").

■ We review a magistrate's determination to ensure that the magistrate "had a 'substantial basis for … conclud[ing]' that probable cause existed." *United States v. Figueroa,* 35 MJ 54, 56 (CMA 1992), quoting *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). Applying this standard, we hold that there were reasonable grounds to believe that the night-vision goggles stolen from the unit were located at appellant's apartment on November 10, 1994. The goggles disappeared at about the time appellant left the unit, and his whereabouts were unknown for the afternoon. Appellant told other soldiers that he intended to secure night-vision goggles before leaving the Army. Thus, the logical place to search would be areas under appellant's control—his truck and his apartment. *See United States v. Johnson,* 23 MJ 209 (CMA 1987); *United States v. Barnard,* 23 USCMA 298, 49 CMR 547 (1975). A cursory consensual search of his apartment and truck on October 20, 1994, did not result in the seizure of the missing goggles.

Later, appellant told a friend that, if he had the night-vision goggles, no one would find them. He also told the maintenance man that investigators were watching his house and he did not want the air filters and smoke alarms changed until the investigation was over. Appellant's statements, in addition to his restriction, heightened the probability that the goggles were still in the apartment, in an area that would conceal the goggles, and in an area on the maintenance man's checklist. Certainly, the smoke alarms could not conceal night-vision goggles, but the air conditioning motor fan housing unit could.

For these reasons, we hold that the magistrate had a substantial reason for concluding there was probable cause to go back and search appellant's apartment, even without consideration of the polygraph evidence.

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges GIERKE and EFFRON concur.

SULLIVAN, Judge (concurring in the result):

Both *United States v. Figueroa*, 35 MJ 54, 56 (CMA 1992), and *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983), were decided before the decision of the Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Although that case dealt with review of probable-cause determinations for warrantless searches, its *de novo* standard of review has been held applicable in cases where a warrant was issued by a judge. *See United States v. Singleton*, 125 F.3d 1097, 1102 (7th Cir.1997); *cf. United States v. Roby*, 122 F.3d 1120, 1125 (8th Cir.1997). In fact, this Court conducted a *de novo* review of a military magistrate's probable-cause decision despite protests that this standard of review was inappropriate. *See United States v. Hester*, 47 MJ 461 (1998). I am confused by the majority's inconsistency on this issue.

Nevertheless, even applying a *de novo* standard of review, I would find probable cause existed in this case. *See Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978)(search may be upheld if probable cause supported by matters outside those determined to be false).