# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HOLDEN, HOFFMAN, and SULLIVAN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 TIMOTHY W. ROACH**
**United States Army, Appellant**

ARMY 20050018

United States Army Infantry Center and Fort Benning
Fort Benning, Georgia
Richard E. Gordon, Military Judge
Colonel Lyle W. Cayce, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Kirsten V.C. Brunson, JA; Major Charles A. Kuhfahl, Jr., JA; Captain Tyesha E. Lowery, JA (on brief).

For Appellee:  Colonel John W. Miller II, JA; Lieutenant Colonel Michele B. Shields, JA; Major Paul T. Cygnarowicz, JA; Captain Ryan R. McKinstry, JA (on brief).

30 November 2007

-------------------------------------------
OPINION OF THE COURT
-------------------------------------------

HOLDEN, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of conspiracy to commit larceny of military property and the ensuing larceny of military property in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921 [hereinafter UCMJ].  The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for twelve months, and forfeiture of $600.00 pay per month for twelve months.  This case is before our court for review under Article 66, UCMJ.

Appellant asserts the specifications fail to state an offense for the aggravated forms of conspiracy to commit larceny and larceny of military property, under Articles 81 and 121, UCMJ, because they do not specifically allege the property at issue was military property.  His claim merits discussion but not relief.

**FACTS**

On 22 October 2004, appellant was an Initial Entry Training soldier at Fort Benning, Georgia, pending administrative separation for refusal to participate in training. Appellant was detailed to perform duties in the unit arms room together with another soldier pending administrative separation, Private (PVT) Leonard Trujillo. In addition to providing security for unit weapons, the arms room also contained more than 200 AN/PVS-14[1] monocular night vision goggles (NVGs).[2]

Appellant and PVT Trujillo agreed to steal two NVGs from the arms room. Private Trujillo stuffed the two goggles down his pants and provided one to appellant after exiting the arms room. Appellant hid his NVG in another room and recovered it later. After efforts to file the serial numbers off the goggles, the two soldiers went to the Post Exchange, purchased padded envelopes and postage stamps, and addressed the envelopes to persons from whom they could recover them. They placed the stolen NVGs in the postal system using a mailbox near their barracks.

When the loss of the night vision goggles was discovered, the entire battalion of 1200 soldiers, including its leadership cadre, was "locked down."[3] After midnight, approximately seven hours into the lockdown period, PVT Trujillo and appellant admitted stealing the NVGs.

Appellant was subsequently charged with conspiracy and larceny offenses regarding the NVG he stole. The larceny specification alleged theft of a "Night

---

[1] AN/PVS-14 is nomenclature for a particular item of military electronic equipment; the abbreviation is deciphered as follows: "AN/ = Army-Navy"; P = Portable (by man); V = Visual, Visible Light; S = Detecting, Range and Bearing, Search." JOINT CHIEF OF STAFF, JOINT PUB. MIL-STD-196E, DEPARTMENT OF DEFENSE STANDARD PRACTICE – JOINT ELECTRONICS TYPE DESIGNATION SYSTEM, Table 1 (17 Feb. 1998).

[2] Along with weapons, ammunition, and certain communication equipment, NVGs are designated "sensitive items." Such property requires a "high degree of protection and control" based on high dollar value, potential for misuse, or compromise of technology. U.S. DEP'T OF DEF. MAN. 4100.39, FEDERAL LOGISTICS INFORMATION SYSTEM, Table 61 (Oct. 2007).

[3] "Locking down" a unit refers to the practice of administratively directing soldiers to remain in a prescribed area; it is often used to enhance efforts to recover missing sensitive items. *See United States v. Light*, 48 M.J. 187, 188 (C.A.A.F. 1998).

Vision Goggle (AN PVS-14), of a value of about $3,138.00, the property of the United States Government." The conspiracy specification contained the same language, except the words, "Night Vision Goggle." Neither specification included the specific words "military property" when describing the NVG.

Pursuant to a pretrial agreement, appellant entered into a stipulation of fact. Although the stipulation did not use the words "military property" to describe the NVG, it did establish it was "the property of the United States Government," was a sensitive item taken from the unit arms room of A Company, 1st Battalion, 50th Infantry Regiment at Fort Benning, Georgia, and was "used to train Initial Entry [Training] Soldiers."

At trial, when discussing the larceny and conspiracy offenses with appellant during the guilty plea inquiry, the military judge advised appellant of the elements of the offenses. Regarding the larceny offense, the military judge told appellant that proof of the nature of the property as military property was an element of the offense. The judge also properly defined the term "military property" for appellant, including whether such property "either has a uniquely military nature or is used by an armed force in the furtherance of its mission." When discussing whether the NVGs were military property during the providence inquiry, appellant had the following exchange with the military judge:

> MJ: Who did these [NVGs] belong to?
>
> ACC: The Army, sir.
>
> MJ: The Army. But were they part of the inventory of 1/50th Infantry?
>
> ACC: Yes, sir.
>
> . . . .
>
> MJ: And do you agree that the property used by–this property was used by the Army in furtherance of its mission?
>
> ACC: Yes, sir.
>
> MJ: Do you agree that the property had a uniquely military nature?
>
> ACC: Yes, sir.

3

> MJ:  Do you admit the night vision goggles-the night vision goggle you took was military property?
>
> ACC: Yes, sir.

At the conclusion of the providence inquiry, the military judge asked trial counsel for his position on the maximum possible punishment for appellant's offenses.  The trial counsel's response included a total period of confinement of ten years.  The military judge replied:  "Well, I don't see it as that way.  What do you see it as [defense counsel]?"  The defense counsel responded, "Sir, I calculate it as 20 years confinement."  The military judge agreed with defense counsel's twenty-year calculation because each offense subjected appellant to a ten-year maximum confinement period: "[T]he maximum authorized for [the conspiracy] is the [same as] the object of the conspiracy in this case[,] larceny of military property [of a value] over $500[.00]."  *See Manual for Courts-Martial, United States* (2002 ed.) [hereinafter *MCM*], Part IV, para. 5e.

## LAW

### *Military Property as the Subject of Conspiracy and Larceny*

"Military property is all property, real or personal, owned, held, or used by one of the armed forces of the United States."  *Id.* at para. 32c(1).[4]  "Army property

---

[4] "The term 'military property' is not defined in the punitive articles portion of the *MCM* describing Article 121, UCMJ.  *MCM*, Part IV, para. 46e(1); *see also* 10 U.S.C. § 921.  The term is defined, however, in the discussion section in the punitive articles portion describing Article 108, UCMJ.  *MCM*, Part IV, para. 32c(1); *see also* 10 U.S.C. § 908.  The continued confusion evidenced by alleging "government property" when "military property" was intended may well be caused by the content and arrangement of the Article 121 explanatory paragraphs.  *Id.* at para. 46c, *et. seq.* First, the cross-reference to the Article 108 definition of "military property" is buried in a bracketed parenthetical comment in the list of elements for Article 121, UCMJ.  *Id.* at para. 46b(1)(d).  Second, there is no definition or explanatory paragraph describing "military property" under the most appropriate italicized heading under Article 121, UCMJ: "Ownership of the property."  *Id.* at para. 46c. Finally, the absence of a "military property" definition or explanatory paragraph under Article 121, UCMJ, is compounded by the apparent "neon sign effect" of the explanatory paragraph with the italicized heading of "Government property."  *Id.* at para. 46c(1)(g)(ii).  The latter refers only to a method of computing the dollar value

(continued . . .)

is all property under the control of [the Department of the Army,] except property accounted for as owned by a nonappropriated fund (NAF) activity." Army Reg. 735-5, Policies and Procedures for Property Accountability, para. 3-1 (28 February 2005).[5]

Under Article 121, UCMJ, larcenies involving military property are subject to increased maximum punishment. *United States v. Smith*, 49 M.J. 269, 270 (C.A.A.F. 1998) (under Article 121, UCMJ, military property is not an element of the offense, but instead a sentence escalator). The maximum period of confinement for larceny of military property of a value of more than $500.00 is ten years; the maximum period of confinement for theft of other than military property of the same value is only five years. *MCM*, Part IV, para. 46e(1)(c) and (d). To obtain the sentence enhancement, the nature of the property as military property must be proven as an additional element of the offense. *Id.* at para. 46b(1)(d) and (e).

### *The Legal Sufficiency of a Specification*

The standard for determining whether a specification states an offense is "whether [the] specification alleges 'every element' of [the offense] 'either expressly or by necessary implication, so as to give the accused notice and protect him against double jeopardy.'" *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994) (quoting Rule for Courts-Martial [hereinafter R.C.M.] 307(c)(3)); *United States v. Sell*, 11 C.M.R. 202 (C.M.A. 1953). Failure to object at trial does not waive the issue of the legal sufficiency of a specification on appeal. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006) (citing R.C.M. 905(e)). If, however, a specification has not been challenged at trial, the sufficiency of the specification may be sustained on appeal if the "necessary facts appear in any form, or by fair construction can be found, within the terms of the specification." *Id.*

In addition to viewing post-trial challenges to a specification under the fair construction rule, "standing to challenge a specification on appeal [is] considerably less where an accused knowingly and voluntarily pleads guilty." *United States v. Watkins*, 21 M.J. 208, 210 (C.M.A. 1986). "The question of whether a specification states an offense is a question of law, which this [c]ourt reviews de novo." *Crafter*,

---

(. . . continued)

of stolen or wrongfully appropriated property; however, the confluence of the aforementioned omitted and italicized references appears to be the "smoking gun" of charging errors regarding military and government property.

[5] This provision is unchanged from the 10 June 2002 version in effect at the time of appellant's offenses.

64 M.J. at 211 (citing *Dear*, 40 M.J. at 197; *United States v. Mayo*, 12 M.J. 286, 288 (C.M.A. 1982)).

**DISCUSSION**

This case highlights the difficulties caused by imprecise use of the term "government property" in charging documents when the term "military property" should have been used instead. The terms are not interchangeable. All government property is not military property; however, all military property is government property. "There is no special repercussion at all flowing from whether the property was 'property of the United States Government.'" *United States v. Hemingway*, 36 M.J. 349, 352 (C.M.A. 1993).

Our court previously addressed the legal sufficiency of a specification after it failed to include the language "military property" in an analogous case involving Article 108, UCMJ. *United States v. Schiavo*, 14 M.J. 649 (A.C.M.R. 1982). In that case, the specification only alleged that the property, a telephone, was property of the United States and located on a military installation in Germany. *Id*. at 650. This Court held that "unlike weapons or certain tactical vehicles, a telephone is not property unique to the military even in overseas commands," and set aside the specification. *Id*.

In this case, unlike *Schiavo*, the unique military nature of an NVG is readily apparent from its purpose and function. *See Legal and Legislative Basis*, *MCM*, United States, 1951, p. 264 ("[T]he fact that the property in question was of a type and kind issued for use in the military service might, together with other circumstances, raise an inference that the property was military property."); *United States v. Schelin*, 15 M.J. 218, 220 (C.M.A. 1983) (the unique military nature of some items, "such as tanks, cannons, or bombers," demonstrate that they are military property). Equally significant, both the larceny and conspiracy specifications alleged that the property was stolen "*at or near Fort Benning, Georgia*" and was an "*AN/PVS-14, [Night Vision Goggle]*[6] *. . . property of the United States Government.*" (emphasis added). Accordingly, the unique military nomenclature of the stolen NVG, location of theft, and identification of the item as belonging to the United States Government is sufficient on these facts to fairly characterize the property as military property. *See e.g., United States v. Willingham*, 12 C.M.R. 278 (A.B.R. 1953) (this Court considered the "stock number and nomenclature markings" in

---

[6] As previously noted, the larceny specification further identified the stolen item as a "Night Vision Goggle."

holding that Khaki shorts and shirts were military property under Article 108, UCMJ).

In addition to the language within the specifications, the record of trial demonstrates appellant was on notice the government had charged the aggravating element of military property. Appellant did not object when the military judge notified him that military property was an element of the offense, nor did he object during the providence inquiry. In fact, appellant told the military judge the stolen NVG was military property. If the foregoing were not sufficient to demonstrate whether appellant was properly on notice, we add an additional factor: the defense counsel was the first to point out the correct calculation of the maximum term of confinement was twenty years, and that calculation was based on the property being military property.[7]

We find appellant "was not misled, as he ple[d] guilty to both specifications, had the element [alleging the property was military property] correctly explained to him during the providence inquiry, and admitted that he understood the offenses to contain the element [that the property was military property.]" *Watkins*, 21 M.J. at 210. Although the sentence enhancement for offenses involving military property under Article 121, UCMJ, requires that characterization be alleged, the President has not required that allegation appear in any particular form. *United States v. Hammond*, 60 M.J. 512, 516 (A.C.C.A. 2004) (failure to follow the sample specification contained in the *MCM* does not by itself constitute legal error). The specifications provided sufficient notice that the object of the larceny and conspiracy was military property, protected appellant from double jeopardy, and appellant has alleged no specific prejudice due to the omission. Consequently, "under the circumstances of this case, the specification is sufficient to withstand challenge at this late stage of the proceedings." *Watkins*, 21 M.J. at 210.

---

[7] Defense counsel's comment on the maximum punishment was in response to a direct question by the military judge, was in keeping with ethical rules requiring candor to the tribunal, and was not contrary to the interest of his client. Army Reg. 27-26, Rules of Professional Conduct for Lawyers, para. 3-3 (1 May 1992).

ROACH – ARMY 20050018

The findings of guilty and sentence are affirmed.

Judge HOFFMAN and Judge SULLIVAN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court